# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Jamie Nicol Nilsen, | ) | |
|     Petitioner, | ) ) ) | **ORDER GRANTING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |
| vs. | ) ) | |
| United States of America, | ) ) | Case No. 1:16-cv-152 |
|     Respondent. | ) | |

| | | |
|---|---|---|
| United States of America, | ) | |
|     Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| Jamie Nicol Nilsen, | ) ) | Case No. 1:12-cr-111 |
|     Defendant. | ) | |

The Defendant is serving a 180-month sentence for possession of a firearm and ammunition by a convicted felon. On June 7, 2016, the Defendant filed a "Motion to Vacate under 28 U.S.C. § 2255 (Johnson Claim)." See Docket No. 53. The Defendant's motion is based on the United States Supreme Court's holding in Johnson v. United States, 135 S. Ct. 2551 (2015). After an initial review of the motion, the Court ordered the Government to file a response. On July 5, 2016, the Government filed a response in opposition to the motion. See Docket No. 57. The Defendant filed a reply on July 18, 2016. See Docket No. 60. The Government filed a supplemental response on July 26, 2016. See Docket No. 64. The Defendant filed a reply to the Government's supplemental response on August 22, 2016. See Docket No. 65. For the reasons set forth below, the motion is granted.

1

**I.     BACKGROUND**

On July 19, 2012, a federal grand jury indicted Nilsen on one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e).  See Docket No. 1.  On October 30, 2012, Nilsen entered an open guilty plea to the one count indictment.  See Docket No. 33.  A sentencing hearing was held on April 24, 2013, at which time it was determined that because Nilsen had two prior burglary convictions, two prior criminal trespass convictions, and an aggravated assault conviction, he qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  See Docket No. 47.  The Court's finding that Nilsen was an armed career criminal triggered a mandatory minimum sentence of 180-months.  The advisory Sentencing Guideline range was determined to be 168-210 months.  See Docket No. 49.  The Court sentenced Nilsen to the mandatory minimum 180-months in prison and 36 months of supervised release.  See Docket No. 48.  No appeal was taken.

On June 7, 2016, Nilsen filed a Section 2255 motion citing the recent opinion of the United States Supreme Court in Johnson v. United States, 135 S. Ct. 2551 (2015), as the basis for the motion.  Nilsen contends that in the wake of *Johnson*, he no longer qualifies as an armed career criminal.  Nilsen's prior convictions, which resulted from guilty pleas, are as follows:

> 1) Criminal Trespass, in Williams County (ND) District Court, Case No. 04-K-880, on or about December 20, 2004.  Class C felony.  This offense was committed on October 17, 2004.  See Docket No. 36-1.
>
> 2) Burglary, Williams County (ND) District Court, Case No. 06-K-0986, on or about December 27, 2006.  Class C felony.  This offense was committed on August 8, 2006.  See Docket No. 36-2.
>
> 3) Burglary, Williams County (ND) District Court, Case No. 06-K-0987, on or about December 27, 2006.  Class C felony.  This offense was committed on August 8, 2006.  See Docket No. 36-3.

4) Aggravated Assault, Williams County (ND) District Court, Case No. 06-K-0951, on or about December 27, 2006. Class C felony. This offense was committed on August 8, 2006. See Docket No. 36-4.

5) Criminal Trespass, in Morton County (ND) District Court, Case No. 30-10-K-312, on or about April 26, 2010. Class C felony. This offense was committed on April 4, 2010. See Docket No. 36-5.

The Government concedes the two criminal trespass convictions no longer qualify as "violent felony" convictions because the *Johnson* decision declared the residual clause of the ACCA to be unconstitutional, and the offenses do not qualify as a "violent felony" under any other section of the ACCA. The Government maintains Nilsen's two burglary convictions still qualify as 924(e) predicates under the "enumerated offenses clause" of the ACCA and his aggravated assault conviction qualifies under the "force clause" of the ACCA. The matter has been fully briefed and is ripe for a decision.

## II. STANDARD OF REVIEW

"28 U.S.C. § 2255 provides a federal prisoner an avenue for relief if his 'sentence was imposed in violation of the Constitution or laws of the United States, or . . . was in excess of the maximum authorized by law.'" King v. United States, 595 F.3d 844, 852 (8th Cir. 2010) (quoting 28 U.S.C. § 2255(a)). This requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). A 28 U.S.C. § 2255 motion is not a substitute for a direct appeal and is not the proper way to complain about simple trial errors. Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994). A 28 U.S.C. § 2255 movant "must clear a significantly higher hurdle than would exist on direct

3

appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis, 417 U.S. at 343.

In a case involving an ACCA conviction based on *Johnson*, "the movant carries the burden of showing that the Government did not prove by a preponderance of the evidence that his conviction fell under the ACCA." Redd v. United States, No. 4:16-CV-1665, 2017 WL 633850, at *2 (E.D. Mo. Feb. 16, 2017) (quoting Hardman v. United States, 149 F. Supp. 3d 1144, 1148 (W.D. Mo. 2016)). The movant need not show he was sentenced under the residual clause to maintain a Section 2255 claim under *Johnson*. United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017) (noting sentencing judges are not required to specify under which clause of 18 U.S.C. § 924(e)(2)(B) an offense qualified as a violent felony). A movant may rely on the new rule of constitutional law announced in *Johnson* if his sentence may have been predicated on the now void residual clause.

On a Section 2255 motion, the determination of whether a prior conviction qualifies as a predicate violent felony under the ACCA is subject to *de novo* review. Winston, 850 F.3d at 683; In re Chance, 831 F.3d 1335, 1338-39 (11th Cir. 2016). The court's review is not constrained to the law as it existed when the movant was sentenced, but should be made with the assistance of binding intervening precedent which clarifies the law. In re Chance, 831 F.3d at 1340; Winston, 850 F.3d at 683-84 (applying intervening case law); Redd, No. 4:16-CV-1665, 2017 WL 633850, at *4 n. 3. (noting decisions which clarify or apply existing law or a settled rule apply on collateral review). The burden remains on the movant to show that his sentence, in the wake of *Johnson*, is no longer authorized by the ACCA. In re Chance, 831 F.3d at 1341.

## III. LEGAL DISCUSSION

The ACCA's 180-month mandatory minimum penalty applies when a defendant has at least three prior felony convictions for a "serious drug offense" or a "violent felony," as defined in 18 U.S.C. § 924(e)(2). Absent the armed career criminal finding, the maximum sentence for being a felon in possession of a firearm is ten (10) years. See 18 U.S.C. § 924(a)(2). The ACCA defines "violent felony" as follows:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
>
> (i) **has as an element the use, attempted use, or threatened use of physical force against the person of another**; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The portion of this definition in bold is known as the "force clause" or "elements clause." The underlined portion of this definition is known as the "enumerated offenses clause." The italicized portion is known as the "residual clause."

In *Johnson,* the United States Supreme Court held the residual clause of the ACCA was vague, and the application of the residual clause violates the Constitution's guarantee of due process. Johnson, 135 S. Ct. at 2563. The holding of *Johnson* applies retroactively on collateral review. Welch v. United States, 136 S. Ct. 1257, 1268 (2016). However, the holding in *Johnson* does not apply to the advisory federal Sentencing Guidelines. Beckles v. United States, 137 S. Ct. 886, 895 (2017) (holding the Sentencing Guidelines are not subject to a void for vagueness challenge under the Fifth Amendment Due Process Clause). Therefore, the residual clause no longer provides a basis for qualifying a prior conviction as a "violent felony" under the ACCA.

The crimes listed in the enumerated offense clause refer to the generic version of the offense, and not to all versions of offenses. See Taylor v. United States, 495 U.S. 575, 598 (1990); Mathis v. United States, 136 S. Ct. 2243, 2248 (2016). In order to determine if a prior conviction qualifies, courts apply the "categorical approach." Taylor, 495 U.S. at 600; Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). The categorical approach requires comparing the elements of the offense of conviction to the elements of the generic offense. Taylor, 495 U.S. at 600; Descamps, 133 S. Ct. at 2281. The particular facts underlying the prior conviction are not considered. Taylor, 495 U.S. at 600. The prior conviction qualifies only if the elements of the offense are the same or narrower than the elements of the generic offense. Descamps, 133 S. Ct. at 2281. If the statute is broader than the generic crime, a conviction under that statute cannot serve as a predicate offense under the ACCA. Id. at 2283.

However, in a narrow range of cases, the sentencing court may apply the "modified categorical approach" and look beyond the statutory elements to a limited class of documents to determine what the elements of the underlying offense were. Id. at 2283-84. "The modified categorical approach is available only when a statute lists alternative elements and thus defines multiple separate crimes" and reference to the statute alone does not disclose which version of the offense was charged. United States v. Bess, 655 Fed. App'x 518, 520 (8th Cir. 2016). Such a statute is "divisible," because it "comprises multiple, alternative versions of the crime." Descamps, 133 S. Ct. at 2284. The modified categorical approach may only be used when the elements of the offense are divisible and may not be used when the elements are indivisible. Id. at 2282. The limited class of documents the court may review to determine which alternative, with which elements, formed the basis of the prior conviction includes the charging document, jury instructions, plea agreement, and transcript of the plea colloquy. Id. at 2284. The court can

then compare the elements of the prior conviction with the elements of the generic offense, just as is done when applying the categorical approach, and determine whether the prior conviction corresponds to the generic offense and thus qualifies as a violent felony.  Id.; Mathis, 136 S. Ct. at 2249.  The focus always remains on the elements, and the underlying facts remain irrelevant.  Descamps, 133 S. Ct. at 2285; Mathis, 136 S. Ct. at 2253.

In some cases it can be difficult to determine whether the statute of conviction sets forth alternative elements, or alternative factual means, of satisfying a single element.  Mathis, 136 S. Ct. at 2249.  The distinction is important because the sentencing court may only look to the elements of the offense and not to the facts related to the defendant's conduct.  Id. at 2251.  For example, a statute may set forth various places that the crime of burglary could occur and satisfy an element of the offense, none of which are essential to the conviction.  Id. at 2249.  State court case law may provide the elements versus means answer.  Id. at 2256.  The statute itself may provide the answer because if the alternatives carry different punishments then they are clearly elements.  Id.  The statute may contain a list of "illustrative examples" that are simply means of commission and not elements that must be charged.  Id.  The statute may also identify things which must be charged, and thus are elements, and things which need not be charged, and thus are means.  Id.  The court may also "peek" at the record documents to determine whether the items listed in the statute are elements or means.  If the statute and the record fail to provide a clear answer, the conviction does not qualify as a predicate offense for ACCA purposes.  Id. at 2257.

### A.     **BURGLARY**

Nilsen has two prior felony convictions for class C burglary under North Dakota law.  The question before the Court is whether Nilsen's two burglary convictions qualify as violent

7

felonies under the ACCA's enumerated offenses clause. The Supreme Court has said generic burglary consists of the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit an offense." Taylor, 495 U.S. at 599. The parties dispute whether Nilsen's burglary convictions qualify. It does not appear the Eighth Circuit Court of Appeals has ever had occasion to address North Dakota's burglary statute in relation to the ACCA. Nilsen's burglary convictions occurred in 2006. North Dakota's burglary statute was last amended in 1973. See N.D.C.C. § 12.1-22-02.

### 1.     THE CATEGORICAL APPROACH

Applying the "categorical approach" requires the Court to compare the elements of generic burglary with the elements of North Dakota's burglary statute. Generic burglary consists of the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit an offense." Taylor, 495 U.S. at 599. North Dakota's burglary statute provides as follows:

> 1. A person is guilty of burglary if he willfully enters or surreptitiously remains in a building or occupied structure, or a separately secured or occupied portion thereof, when at the time the premises are not open to the public and the actor is not licensed, invited, or otherwise privileged to enter or remain as the case may be, with intent to commit a crime therein.
>
> 2. Burglary is a class B felony if:
>
> a. The offense is committed at night and is knowingly perpetrated in the dwelling of another; or
>
> b. In effecting entry or while in the premises or in immediate flight therefrom, the actor inflicts or attempts to inflict bodily injury or physical restraint on another, or menaces another with imminent serious bodily injury, or is armed with a firearm, destructive device, or other weapon the possession of which under the circumstances indicates an intent or readiness to inflict serious bodily injury.
>
> Otherwise burglary is a class C felony.

N.D.C.C. § 12.1-22-02(1). The statute does not define the term "building." "Occupied structure" is defined as follows:

> 4. "Occupied structure" means a structure or <u>vehicle</u>:
>
>   a. Where any person lives or carries on business or other calling; or
>
>   b. Which is used for overnight accommodation of persons.
>
>   c. Any such structure or vehicle is deemed to be "occupied" regardless of whether a person is actually present.

N.D.C.C. § 12.1-22-06 (emphasis added).

Nilsen contends North Dakota's burglary statute is broader than the generic version because the definition of "occupied structure" includes vehicles whereas the generic version applies only to a building or structure. The Government contends the vehicles referenced are those in which a person lives and uses as a residence, and thus the statute is not broader than the generic version. The dispute between the parties focuses on the first element of North Dakota's burglary statute which the Court will refer to as the locational element. <u>See</u> North Dakota Criminal Pattern Jury Instruction K-9.12. There is no dispute that North Dakota's burglary statute satisfies the elements of generic burglary which require unlawful entry and an intent to commit a crime therein.

The Court agrees with Nilsen that because North Dakota's burglary statute covers vehicles, it covers more conduct than generic burglary. Thus, Nilsen's North Dakota burglary convictions do not qualify categorically as ACCA violent felonies. <u>See</u> <u>Shepard v. United States</u>, 544 U.S. 13, 15-16 (2005) (noting the ACCA "makes burglary a violent felony only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle"); <u>Mathis</u>, 136 S. Ct. at 2250 (Iowa burglary statute covering "any building, structure, [or] land, water, or air vehicle" was broader than generic burglary); <u>United States v. Bess</u>, 655 Fed. App'x

518, 519 (8th Cir. 2016) (finding Missouri's second-degree burglary statute defined inhabitable structure to include a ship, trailer, sleeping car, airplane, or other vehicle or structure was broader than generic burglary).

The Eighth Circuit Court of Appeals has very recently rejected the Government's argument that vehicles in which a person lives or can be used for overnight accommodation fall within the definition of generic burglary.  See United States v. Lamb, 847 F.3d 928, 931 (8th Cir. 2017) (finding Wisconsin's burglary statute which covers motor homes was "without question" broader than generic burglary); United States v. Sims, No. 16-1233, slip op. at 5 (8th Cir. April 27, 2017) (finding Arkansas' residential burglary statute which applies to vehicles in which a person lives or that are used for overnight accommodation was broader than generic burglary).  The Eighth Circuit decision in *Sims* was just recently published and is directly on point.  Further, the United States Supreme Court has never made an exception to the definition of generic burglary for vehicles of any sort, or for vehicles that have been adapted for some other use such as sleeping or conducting business.

The Missouri burglary statute which the Eighth Circuit Court of Appeals found was broader than generic burglary in *Bess* is virtually identical to North Dakota's class C burglary statute.  The Missouri burglary statute analyzed in *Bess* provided "[a] person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein."  Mo. Rev. Stat. § 569.170.1.  Although Missouri has since repealed its definition of "inhabitable structure," at the time *Bess* was decided, Missouri law defined "inhabitable structure" as follows:

> "Inhabitable structure" includes a ship, trailer, sleeping car, airplane, or other <u>vehicle</u> or structure:
>
> > (a) Where any person lives or carries on business or other calling; or

> (b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation; or
>
> (c) Which is used for overnight accommodation of persons. Any such <u>vehicle</u> or structure is "inhabitable" regardless of whether a person is actually present.

Mo. Rev. Stat. § 569.010(2) (emphasis added). The Eighth Circuit Court of Appeals in <u>Bess</u> reasoned that because this definition of "inhabitable structure" included "a ship, trailer, sleeping car, airplane, or other <u>vehicle</u> or structure," it covered a broader range of conduct than generic burglary. <u>Bess</u>, 655 Fed. App'x at 519 (emphasis added).

North Dakota's burglary statute and the Missouri second degree burglary statute found overbroad by the Eighth Circuit Court of Appeals in <u>Bess</u> are virtually identical. In addition, North Dakota's definition of "occupied structure" is similar to the relevant Missouri definition of "inhabitable structure." North Dakota's definition of "occupied structure" is not as broad as Missouri's definition of "inhabitable structure" because it does not refer to ships, trailers, sleeping cars, or airplanes. However, both definitions refer to vehicles which is enough to make both statutes broader than generic burglary. See <u>Mathis</u>, 136 S. Ct. at 2250 (burglary statute which covers "land, water, or air vehicle" is broader than generic burglary); <u>Descamps</u>, 133 S. Ct. at 2284 (noting a burglary statute which covers automobiles is non-generic). Given the similarity in the two statutes which both cover vehicles, the Court concludes North Dakota's burglary statute is broader than generic burglary.

While the Government engages in linguistic gymnastics in an attempt to read the word "vehicle" out of North Dakota's definition of occupied structure, the Court is unpersuaded. The fact remains that the definition of "occupied structure" covers certain classes of vehicles which makes North Dakota's burglary statute broader than the generic version which does not cover

any vehicles. Nevertheless, Nilsen's burglary convictions may qualify as predicate offenses under the "modified categorical approach." See Descamps, 133 S. Ct. at 2284.

## 2. THE MODIFIED CATEGORICAL APPROACH

Before the Court can apply the "modified categorical approach," it must first determine whether the statute in question is divisible. See Bess, 655 Fed. App'x at 520. If the statute is not divisible, the Court is not allowed to apply the modified categorical approach. Id. A statute is only divisible if it lists alternative elements. Id. If the statute lists alternative means of satisfying an element, then it is not divisible, the modified categorical approach cannot be used, and the convictions in question do not qualify as ACCA predicates. Id. Since North Dakota's burglary statute is very similar to Missouri's burglary statute, the Court will look to case law interpreting Missouri's statute for guidance.

The question becomes whether the phrase "building or occupied structure, or a separately secured or occupied portion thereof" in North Dakota's burglary statute contains alternative elements or alternative means. While the divisibility determination may seem straight forward in theory, the actual inquiry has proven to be anything but simple. The Eighth Circuit has determined that Missouri's second degree burglary statute contains two alternative elements: burglary "of a building" or "of an inhabitable structure." United States v. Sykes, 844 F.3d 712, 715 (8th Cir. 2016). The Eighth Circuit's holding was based on the use of the disjunctive "or" between the two phrases and without any review of Missouri state court decisions. Id. It was undisputed in *Sykes* the defendant had burglarized buildings rather than inhabitable structures and thus his Missouri second-degree burglary conviction were violent felonies for purposes of the ACCA. Id. at 715-16. A petition for rehearing *en banc* was denied on a 5-4 vote with the

dissenting judges criticizing the lack of analysis on the divisibility issue. United States v. Sykes, No. 14-3139, 2017 WL 1314937, at *1-2 (8th Cir. Mar. 17, 2017). The holding in *Sykes* remains binding precedent for the time being. See United States v. Naylor, No. 16-2047, 2017 WL 1163645, at *2 (8th Cir. Mar. 28, 2017).

There does not appear to be any case law from the North Dakota Supreme Court which sheds light on the means versus elements question. The statute itself does not indicate what language must be charged. There is no difference in the penalty, which would be indicative of alternative elements, based on whether a "building" versus an "occupied structure" is charged. Most of the tools the United States Supreme Court in *Mathis* suggested the lower courts use in making a divisibility determination are lacking when analyzing North Dakota's class C burglary statute.

North Dakota's pattern jury instructions support the contention the statute contains at least two separate elements: "building or occupied structure" and "a separate secured or occupied portion of a building or occupied structure" which are listed as alternates in the instruction. See North Dakota Criminal Pattern Jury Instruction K-9.12. North Dakota has chosen to define "occupied structure," but has not defined "building" and has not defined the phrase "building or occupied structure" as one term. See N.D.C.C. § 12.1-22-06. The lack of a definition for the phrase "building or occupied structure" supports the contention the phrase contains separate elements rather than alternate means. A "peek at the record" of charging documents in this case reveals Nilsen was charged with burglarizing a "building" with no reference to an occupied structure.. See Docket Nos. 36-2 and 36-3. The manner in which Nilsen was charged supports the idea that the statute lists alternate elements.

While reasonable persons could disagree as to the divisibility of North Dakota's burglary statute, the Court finds it is divisible. See Sykes, 844 F.3d at 715 (relying on the disjunctive nature of Missouri's burglary statute to find it listed alternative elements and thus was divisible). As the Court noted above, North Dakota's burglary statute and the Missouri burglary statute at issue in *Bess* and *Sykes* are virtually identical. Section 12.1-22-02 of the North Dakota Century Code contains four distinct elements: "building," "occupied structure," "separately secured or occupied portion of a building," and "separately secured or occupied portion of an occupied structure." Any one of these elements could be charged and proven to satisfy the locational element of the statute. If the charging document only references burglary of a "building," such as is the case here, it would equate with generic burglary, while reference to an "occupied structure" would not. See Taylor, 495 U.S. at 599.

Another perspective is that the only North Dakota burglary convictions which could count as predicate violent felonies for purposes of the ACCA are ones which charge burglary of a "building" or a "separately secured or occupied portion of a building" and thus make no reference to an "occupied structure." A conviction under the "occupied structure" element of the statute would not qualify as a violent felony under the ACCA.

In applying the modified categorical approach after a finding that a statute is divisible, review is confined to a limited class of documents including the charging document, jury instructions, plea agreement, and plea colloquy. Sykes, 844 F.3d at 715. In this case, the charging documents in the two burglary cases are available for review. See Docket Nos. 36-2 and 36-3. The United States Supreme Court has said lower courts may only look at the elements of the charge which the defendant pled guilty to and not the particular facts or factual basis for the plea. Taylor, 495 U.S. at 600-01 (rejecting the factual approach which permitted sentencing

14

courts to look at "the facts of each defendant's conduct" in favor of a categorical elements only approach); Descamps, 133 S. Ct. at 2284 (stating the "factual basis" for the prior plea is not be considered when applying the modified categorical approach); Mathis, 136 S. Ct. at 2252 (adhering to an "elements-only inquiry" which does not permit a judge to look at "what the defendant had actually done" or "explore the manner in which the defendant committed that offense").

In this case, applying the modified categorical approach and comparing the elements in the charging documents to the generic offense, the Court finds that both of Nilsen's burglary convictions still qualify as ACCA predicates. See Docket Nos. 36-2 and 36-3. The charging documents demonstrate Nilsen was only charged with burglarizing a "building" and make no reference to an "occupied structure." See Docket Nos. 36-2 and 36-3. Thus, Nilsen's burglary convictions equate with the generic definition of burglary and count as violent felonies for ACCA purposes.

B. **AGGRAVATED ASSAULT**

The parties dispute whether Nilsen's North Dakota aggravated assault conviction qualifies under the force clause of the ACCA. Nilsen contends Section 12.1-17-02(1) is overbroad in that the definition of willful includes a reckless *mens rea,* and the reckless application of force cannot constitute the use of force. This argument hinges on what it means to "use" force. Nilsen also contends Section 12.1-17-02(1) does not require proof that "violent force" was used to cause injury to the victim. The second argument hinges on causation. The Government contends Nilsen's arguments are foreclosed by Eighth Circuit precedent.

15

A conviction under the force clause of the ACCA qualifies if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). "Physical force 'means violent force--that is, force capable of causing physical pain or injury to another person.'" United States v. Eason, 829 F.3d 633, 640 (8th Cir. 2016) (internal citations omitted).

The Court applies the categorical approach by looking only to the fact of conviction and the statutory definition of the elements of offense of conviction. Eason, 829 F.3d at 640. The parties agree[1] Nilsen was convicted of aggravated assault under N.D.C.C. § 12.1-17-02(1) which provides as follows:

A person is guilty of a class C felony, . . ., if that person:

1. Willfully causes serious bodily injury to another human being.

N.D.C.C. § 12.1-17-02(1) (1999). North Dakota defines "serious bodily injury" as "bodily injury that creates a substantial risk of death or which causes serious permanent disfigurement, unconsciousness, extreme pain, permanent loss or impairment of the function of any bodily member or organ, a bone fracture, or impediment of air flow or blood flow to the brain or lungs." N.D.C.C. § 12.1-01-04(29). North Dakota defines "willfully" as acting "intentionally, knowingly, or recklessly." § 12.1-02-02(1)(e).

While Nilsen's argument regarding whether the reckless use of force qualifies as a violent felony has considerable merit, his argument that Section 12.1-17-02(1) does not require proof that "violent force" caused the victim's "physical pain or injury" as required by the force clause of the ACCA, fails. See Johnson, 559 U.S. at 140. Section 12.1-17-02(1) requires proof of serious bodily injury, and "it is impossible to cause bodily injury without using force 'capable

---

[1] The charging document references Section 12.1-17-02(3) but the language in the Information tracks Section 12.1-17-02(1).

16

of' producing that result." United States v. Rice, 813 F.3d 704, 706 (8th Cir. 2016) quoting United States v. Castleman, 134 S. Ct. 1405, 1414 (2014) (Scalia, J., concurring); United States v. Winston, 845 F.3d 876, 878 (8th Cir. 2017) (rejecting the contention that one can cause physical injury without using physical force).

Nilsen also argues that Section 12.1-17-02(1) is overbroad because the use of force connotes only intentional acts and does not include reckless conduct. To resolve this issue, the Court must determine whether the *reckless* application of force which causes physical pain or injury to another person can constitute the use of physical force. It is undisputed that the *intentional* or *knowing* application of force which causes bodily injury constitutes the use of physical force. Castleman, 134 S. Ct. at 1414 ("the knowing or intentional causation of bodily injury necessarily involves the use of physical force"); Rice, 813 F.3d at 706 (finding it impossible to intentionally or knowingly cause bodily injury without using physical force). In *Leocal*, the United States Supreme Court held that the use of force requires its active employment rather than negligent or accidental conduct. Leocal v. Ashcroft, 543 U.S. 1, 9 (2004) (finding Florida's DUI law was not a crime of violence under 18 U.S.C. § 16(a) because the use of force against another suggests a higher degree of intent than negligent or accidental conduct). In *Castleman*, the United States Supreme Court noted that in *Leocal* it had reserved the question of whether the reckless application of force could constitute the use of physical force while noting that the Courts of Appeal, including the Eighth Circuit, had almost uniformly held that recklessness was not sufficient. Castleman, 134 S. Ct. at 1414 n. 8; United States v. Torres-Villalobos, 487 F.3d 607, 616 (8th Cir. 2007) (finding Minnesota's second-degree manslaughter statute, which includes reckless conduct, was not a crime of violence as defined in 18 U.S.C. § 16(a)). The crime of violence definition in *Torres-Villallobos* is identical to the

force clause at issue in this case. Compare, 18 U.S.C. 924(e)(2)(B)(i) and 18 U.S.C. § 16(a). Based on *Torres-Villallobos*, the Court concludes the reckless application of force does not constitute the use of physical force. Thus, Section 12.1-17-02(1) is overbroad. Nevertheless, Nilsen's aggravated assault conviction may qualify as a predicate offense under the "modified categorical approach" if the statute is divisible and record documents reveal which alternative *mens rea* element was charged.

The Court must first determine whether Section 12.1-17-02(1) is divisible. Because the definition of willfully is disjunctive, Section 12.1-17-02(1) is divisible, and the Court may resort to the modified categorical approach. See Johnson v. United States, 559 U.S. 133, 136 (2010); Sykes, 844 F.3d at 715. Any one of the *mens rea* elements, intentionally, knowingly, or recklessly, could be used in the charging document and proven to satisfy the statute's *mens rea* requirement. If the charging document references intentional or knowing conduct, the conviction would count as an ACCA predicate. If the charging document references reckless or wilful conduct, the conviction would not count as an ACCA predicate.

The Government's reliance on *Garcia-Longoria* for the proposition that the Court can rely on unobjected-to-facts from the Presentence Investigation Report ("PSR") when applying the modified categorical approach is unavailing. 819 F.3d 1063, 1067 (8th Cir. 2016). *Garcia-Longoria* is a pre-*Mathis* Sentencing Guidelines case. In a *post-Mathis* ACCA case the Eighth Circuit Court of Appeals has stressed that courts may not look to unobjected-to-facts from a PSR where the source of the information may have been non-judicial or there is only a vague reference to court records. Eason, 829 F.3d at 642. Application of the modified categorical approach demands certainty. Mathis, 136 S. Ct. at 2257.

Applying the modified categorical approach reveals the charging document alleged that "Jamie Nilsen, willfully cause[d] serious bodily injury to another human being." See Docket No. 36-4. The record does not reveal whether Nilsen's aggravated assault conviction involved an intentional, knowing, or reckless *mens rea* and the Court is not permitted to consult the "brute facts" of the case. Mathis, 136 S. Ct. at 2248. Because the aggravated assault charge to which he pled guilty encompassed reckless conduct, Nilsen's conviction is broader than an ACCA force clause offense, and thus cannot constitute an ACCA predicate.

### III. CONCLUSION

The Court concludes, as a matter of law, that Nilsen is entitled to the relief he seeks because he had only two prior ACCA predicate convictions and thus does not qualify as an armed career criminal. For the reasons set forth above, the Defendant's Motion to Vacate under 28 U.S.C. § 2255 (Docket No. 53) is **GRANTED.**

**IT IS FURTHER ORDERED** that the United States Probation Office shall promptly prepare an updated PSR on Jamie Nilsen. An updated PSR is needed to determine the advisory Sentencing Guideline range in this case as well as address other relevant sentencing factors under 18 U.S.C. § 3553(a). Nilsen will granted a new sentencing hearing as soon as the PSR is completed.

**IT IS SO ORDERED.**

Dated this 17th day of May, 2017.

/s/ Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court